**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TINA SCANLON and PATRICK SCANLON, wife and husband, and BRIAN GARDZALLA and BRANDY GARDZALLA, husband and wife,** | : : : : | **CIVIL ACTION NO: 3:24-758** |
| **Plaintiffs** | : | **(JUDGE MANNION)** |
| **v.** | : | |
| **MSM TRANSPORT, LLC and SULEYMAN MOHAMED,** | : : | |
| **Defendants** | : | |

## MEMORANDUM

Pending before the court in this motor vehicle collision case is the joint motion for leave to file an amended complaint, **(Doc. 27)**, by Plaintiffs Tina and Patrick Scanlon and Brian and Brandy Gardzalla (herein collectively referred to as "Plaintiffs"). Plaintiffs' motion sets forth arguments in support of their request to amend in order to include allegations of recklessness and punitive damages, which are detailed in the proposed amended complaint (Doc. 27-1). For the reasons outlined herein, Plaintiffs' motion will be **GRANTED**.

I.    **Factual Background**

This matter arises out of a tractor trailer and motor vehicle collision that occurred on February 23, 2024. (Doc. 1). As described in the original complaint, Plaintiff Tina Scanlon was operating her pick-up truck in the left southbound lane of Interstate 81 in Moosic Borough, Lackawanna County, Pennsylvania. *Id*., ¶ 6. She encountered traffic conditions that caused her to bring her vehicle to a stop. *Id*. In the same lane directly behind her, Plaintiff Brian Gardzalla began decelerating his car in response to the traffic conditions in front of him. *Id*., ¶ 7. Meanwhile, in the same lane behind Gardzalla,  Defendant Suleyman Mohamed was operating a tractor trailer owned by Defendant MSM Transport, LLC. *Id*., ¶¶ 8,9.

According to Plaintiffs' version of events, Suleyman Mohamed caused the tractor trailer to "violently crash" into the back of Gardzalla's car, "catapulting" Gardzalla's car into the back of Scanlon's stopped pick-up truck. *Id*., ¶ 13.  Mr. Mohamed was operating this tractor trailer on behalf of his own company, MSM Transport, LLC, an interstate freight carrier and Michigan Corporation. *Id*., ¶¶ 9-12.

## II.    **Procedural History** [1]

On May 6, 2024, Plaintiffs filed their original complaint alleging that the collision occurred as a result of Defendants' negligence. *Id.*, ¶¶ 15-16. Relevantly, the complaint did not include allegations of recklessness or request punitive damages. Defendants filed their joint answer to Plaintiffs' complaint on September 10, 2024. (Doc. 7).

According to Plaintiffs, Defendants' discovery production was "shockingly sparce." (Doc. 28 at 3). In their initial Rule 26 disclosures, Defendants merely produced the police report from the collision. *Id.* at 3. Plaintiffs jointly served initial discovery requests on Defendants on January 15, 2025. (Doc. 16-1). Plaintiffs maintain that Defendants responded with "baseless objections, followed by the vague observation that investigation was ongoing." (Doc. 28 at 3).

Dissatisfied with Defendants' discovery responses, Plaintiffs' counsel requested a discovery conference, which occurred on March 25, 2025. (Docs. 16 & 17). They noted, in particular, that Defendants had not produced documentation from the "Motive" platform, an electronic logging

---

[1] The procedural history in this case is pertinent to the present motion and, therefore, a detailed summary is necessary.

device ("EDL") which Mr. Mohamed stated in his discovery responses he had used to track his driving. (Doc. 28 at 4). The court instructed Defendants that supplemental/amended responses were to be provided within 30 days, making the deadline April 25, 2025, and instructed Defendants' counsel to contact Motive by the end of the week. (Doc. 17).

Plaintiffs note that Defendants' supplemental/amended responses omitted relevant information, including driver logs and electronic data relating to Defendants' operation of the tractor trailer, and other documents concerning Mr. Mohamed's travel at the time of the collision. (Doc. 28 at 4). Thus, Plaintiffs' counsel requested another discovery conference, which was held on June 10, 2025. (Docs. 20-22). The court again directed counsel to collect and produce the Motive data. (Doc. 22).

In Mr. Mohamed's deposition on June 24, 2025, he testified that he had contacted Motive "yesterday" and was informed that he would receive his driver logs "within 24 hours." (Doc. 27-1 at 33). Since the instant motion, Plaintiffs' counsel had inquired as to the status of the Motive records and were informed that Defendant had not received any response from Motive. (Doc. 28 at 4). According to Plaintiffs, "an overwhelming amount of self-explanatorily relevant, federally required documentation has still not been produced." *Id.* at 5.

4

On July 29, 2025, after the amendment deadline, Plaintiffs jointly filed the present motion and supporting brief for leave to amend their complaint to add allegations of recklessness and requests for punitive damages. (Doc. 27-28). On August 12, 2025, Defendants filed a brief in opposition, attaching the Motive driver logs as an exhibit. (Doc. 30-6). Plaintiffs timely filed a reply brief on August 21, 2025, alleging that the driver logs produced with Defendants' opposition brief contained "false entries." (Doc. 33 at 2).[2] The court then ordered Defendants to file a response to this new allegation. (Doc. 34). Upon receiving Defendants' sur-reply (Doc. 35), the court scheduled an oral argument, which was held on January 20, 2025.

The court has considered the aforementioned factual background and procedural history and has thoroughly reviewed the pleadings submitted by the parties. Plaintiffs' motion is now ripe for disposition.

---

[2] Plaintiffs' arguments presented in their reply brief relating to Mr. Mohamed's driver logs will be credited given that the driver logs were not made available prior to Defendants' brief in opposition, and given that Defendant was afforded the opportunity to respond via their sur-reply.

## III.    LEGAL STANDARD

When a party moves for leave to file an amended complaint after the pretrial scheduling order's deadline, the court must analyze the moving party's request under both  Rule 15(a) and Rule 16(b) of the Federal Rules of Civil Procedure. *Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000). Under Rule 16(b), a court's schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Third Circuit Court of Appeals has stated that the "good cause" inquiry derived from Rule 16(b) "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Under this standard, "a party is presumptively not diligent if, at the commencement of the lawsuit, the party knows or is in possession of the information that is the basis for that party's later motion to amend." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 702 (E.D. Pa. 2007).

Where the moving party demonstrates good cause under Rule 16(b), the court must next analyze the request under Rule 15(a) of the Federal Rules of Civil Procedure, "Amended and Supplemental Pleadings," which states that "a party may amend its pleadings only with the opposing party's written consent or the court's leave," and that "the court should freely give

leave when  justice so requires." Fed. R. Civ. P. 15(a)(2).  While Rule 15 liberally allows leave to amend to be "freely given," it is within the sound discretion of the trial court to deny leave to amend a complaint "where it is apparent from the record that: (1) there is undue delay, bad faith or dilatory motive; (2) the amendment would be futile; or (3) the amendment would prejudice the other party." *Black v. Metso Paper USA, Inc*., 240 F.R.D. 155, 160 (M.D. Pa. 2006) (citing *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).

## IV.    DISCUSSION

Plaintiffs' motion relies on new information uncovered during the later stages of discovery, which they argue was not knowable at the time they filed their original complaint. (Doc. 28 at 12). It was only after Defendant Mohamed's deposition on June 24, 2025, and the subsequent report from Plaintiffs' industry expert, that they believed Defendants had "egregiously violated" Federal Motor Carrier Safety Administration ("FMSCA") regulations. *Id*. This included violations of hours-of-service rules and the failure to maintain logs of driving and working hours. *Id*. Based on this evidence and the reasonable inferences from Plaintiffs' expert, they argue that Defendants' conduct leading up to and during the

collision was reckless, justifying their request to add allegations of recklessness and punitive damages via amended complaint.

Defendants argue that the court should deny Plaintiffs' motion because it did not meet the court's deadline for amending pleadings and because Plaintiffs failed to demonstrate good cause for the delay under Fed. R. Civ. P. 16(b)(4). Further, Defendants argue that, even if they demonstrated good cause under Rule 16(b)(4), Plaintiffs' amendment would be both prejudicial and futile under Fed. R. Civ. P. 15(a)(2).

### A. Rule 16(b)(4)

Here, Plaintiffs moved to amend their complaint on July 29, 2025, more than fourteen months after initiating this action, and more than two months after the amendment deadline. *See* (Docs. 14, 24). Despite this delay, Plaintiffs argue that new information has come to light through "factual evidence and expert opinions" that were not previously available to them. (Doc. 28 at 12). It was only after Mr. Mohamed's deposition on June 24, 2025, that Plaintiffs' experts, upon reviewing the deposition testimony, were fully equipped with this new information, which they incorporated into their findings and shared with Plaintiffs. *Id*.

However, this purported "new information"—i.e., statements from Mr. Mohamed's deposition—does not align with what Plaintiffs claim it to

be. For instance, contrary to Plaintiffs' claim that the deposition revealed Defendants' "wholesale failure to maintain logs of driving and working hours," Mr. Mohamed's testimony did not confirm this. Instead, Mr. Mohamed testified that he could not remember whether he logged his hours, stating, "I don't remember that day," and adding, "[i]t's been a long time ago, but I was in compliance with the DOT that day." (Doc. 30-5 at 23). Moreover, Plaintiffs' second major claim regarding the deposition—that it suggests Mr. Mohamed "operated his tractor-trailer in a manner consistent with a fatigued, distracted and inattentive driver in violation of the FMCSA's hours of service limitations"—is unsupported by the deposition transcripts provided by either party, let alone the pages that Plaintiff cites to. *See* (Doc. 28 at 12). To the contrary, Mr. Mohamed stated that he "still had more hours to drive" on the day of the collision, (Doc. 30-5 at 23), and responded "no" when asked whether he was tired or had exceeded the hours-of-service limit prior to the accident. *Id*. at 34.

On the other hand, the court is reluctant to fault Plaintiffs for the timeliness of their motion in light of Defendants' consistent failure to comply with their discovery obligations. In particular, Defendants were instructed by the court on March 25, 2025 to contact Motive by the end of the week to obtain Mr. Mohamed's driver logs. Months later, in a

subsequent June 10, 2025, discovery conference, the court again instructed Defendant to collect his driver logs from Motive. On June 24, 2025, Mr. Mohamed testified that he contacted Motive "yesterday" and that Motive replied that they would email him the driver logs within 24 hours. However, it was not until August 12, 2025, in Defendants' brief in opposition to Plaintiffs' present motion, that Defendants conveniently produced these driver logs from Motive. Even more concerning, the driver logs indicate that they were printed out on June 23, 2025, suggesting that Defendants may have had them in their possession much earlier, but waited until they were forced to defend against Plaintiffs' present motion to finally produce them.

Given that these driver logs are pertinent to Plaintiffs' allegations supporting recklessness and punitive damages, and that Defendants were months late in producing them, Defendants cannot in good faith argue that Plaintiffs should have moved to amend sooner. To the contrary, Plaintiffs could not have known whether Defendants complied with the FMCSA's hours-of-service limitations or adequately maintained driving logs without first receiving them. Instead, they were compelled to draw logical conclusions that Defendants' failure to fulfill these discovery obligations was an effort to hide information that might demonstrate wrongdoing.

Accordingly, the court finds that Plaintiffs' have demonstrated good cause for not moving to amend before the court's deadline.

**B. Rule 15(a)(2)**

**i.  Whether the Amendment would be Futile**

In the context of Rule 15(a)(2), "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008). "While Defendants may ultimately present facts to dispute the allegations of the Second Amended Complaint, the Court is constrained to consider the factual underpinnings of the motion for leave to amend based upon the allegations set forth in the pleading itself." *M.G. v. Crisfield,* 2009 WL 2920268, at *7 (D.N.J. 2009).

Here, Defendants argue that, even taking the allegations in Plaintiffs' motion as true, such allegations are nevertheless futile because they fail to satisfy the standard of outrageous or reckless conduct required in a claim for punitive damages. (Doc. 30 at 13). Given that Plaintiffs' diversity action involve claims based on Pennsylvania law, the court must apply Pennsylvania's standard when analyzing the allegations for punitive damages. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

According to the Pennsylvania Supreme Court:

> The standard for governing the award of punitive damages
> in Pennsylvania is settled. Punitive damages may be
> awarded for conduct that is outrageous, because of the
> defendant's evil motive or his reckless indifference to the
> rights of others. As the name suggests, punitive damages
> are penal in nature and are proper only in cases where the
> defendant's actions are so outrageous as to demonstrate
> willful, wanton or reckless conduct.

*Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (internal quotations
and citations omitted). Punitive damages are used as a tool to punish and
deter certain conduct, and therefore "[t]he state of mind of the actor is vital.
The act, or the failure to act, must be intentional, reckless, or malicious."
*Id*. at 770–71 (citing *Feld v. Merriam*, 485 A.2d 742, 748 (1984)). Stated
differently, "a punitive damages claim must be supported by evidence
sufficient to establish that (1) a defendant had a subjective appreciation of
the risk of harm to which the plaintiff was exposed and that (2) he acted,
or failed to act, as the case may be, in conscious disregard of that risk."
*Hutchinson*, 870 A.2d at 772.

Here, the allegations set forth in Plaintiffs' brief and subsequent reply
brief are that Mr. Mohamed was "operating his truck in excess of the hours-

of-service limitations and that he intentionally tried to conceal that fact by falsifying log entries." (Doc. 33 at 12). Specifically, Plaintiffs cite a detailed analysis of Mr. Mohamed's driver logs from their industry expert suggesting that he could have been driving upwards of 29 hours prior to the collision, far in excess of the hours-of-service limitations. *Id.* at 4. Further, Plaintiffs allege that despite knowing the safety risks associated with driving tired, Mr. Mohamed willfully exceeded the driving limitations causing him to drive his tractor-trailer "in a clearly fatigued and inattentive state" with a "diminished attention level" before "slam[ing] into the back of readily observable vehicles stopped at the end of a long line of traffic." *Id.* at 12-13. Thus, unlike many of the cases cited by Defendants, Plaintiffs' allegations not only specify the federal regulations that were violated but also indicate that the violations were intentional, despite being aware of the safety risks, and that the collision resulted from Defendants' disregard of those risks.

Given the liberal standard for the amendment of pleadings, and taking the allegations of the proposed amended complaint as true, the court finds that Plaintiffs have presented sufficient facts to support the imposition of punitive damages. If Mr. Mohamed was indeed in knowing violation of the hours-of-service limitations on the day of the accident,

causing him to operate his tractor-trailer in a "fatigued" or "inattentive" manner, was aware of the risks associated with this violation, and that conscious disregard of the risk led to the collision, Plaintiffs could plausibly establish that Defendants acted with reckless indifference. Although the parties put forth competing evidence regarding whether Mr. Mohamed was operating his vehicle in a fatigued or inattentive state, or whether he did exceed the hours-of-service limitations, consideration of this evidence is improper on a motion for leave to amend. The court finds that Plaintiffs' factual allegations in the proposed amended complaint, if proven at trial, could support the imposition of punitive damages.

### ii.  Whether the Amendment would be Prejudicial

Finally, Defendants argue that allowing Plaintiffs to amend the complaint to include these new allegations would cause them substantial prejudice, as it would require them to conduct additional discovery and retain new experts. (Doc. 30 at 10).

"It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). However, merely claiming prejudice is insufficient; the opposing party "must show that it was unfairly disadvantaged or deprived of the

opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 425 (3d Cir. 1981) (citing *Deakyne v. Commissioners of Lewes*, 416 F.2d 290, 300 n. 19 (3d Cir. 1969)).

Here, Defendants' argument that an amendment would necessitate further discovery or the retention of experts, thereby incurring additional costs, does not sufficiently establish prejudice. *See Southeastern Pennsylvania Transportation Authority v. Orrstown Financial Services, Inc.*, 335 F.R.D. 54, 77 (M.D. Pa. 2020); *see also Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990). Further, Plaintiffs' new allegations directly relate to the cause of the collision alleged in the original complaint, and "any claim of prejudice . . . regarding additional discovery is undercut by the fact that the new allegations of the proposed [amended complaint] share a close factual nexus with the claims currently pending against them." *Southeastern Pennsylvania Transportation,* 335 F.R.D. at 77.

To the extent that Defendants may be at a disadvantage with punitive damages added to the complaint at this stage of the litigation, it was not the result of an unfair process. As the court mentioned, Defendants cannot benefit from their failure to comply with discovery obligations by producing pertinent discoverable material several months

late—only when it was convenient for their defense—and then claiming prejudice on the grounds that Plaintiffs' motion was untimely. Further, the fact that the new allegations in the proposed amended complaint are based largely on documents withheld or produced by Defendants weighs against the finding of prejudice. *See Grill v. Aversa*, 2014 WL 198805, at *4 (M.D. Pa. 2014) (finding no prejudice to opposing party where proposed amended pleading was based on facts provided late by opposing party during discovery period).

## V.    CONCLUSION

Accordingly, Plaintiffs' motion for leave to file an amended complaint to include allegations of recklessness and to seek punitive damages, (Doc. 27), will be **GRANTED**. An appropriate order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: February 9, 2026**
24-0758-01